## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO

| | | | |
|---|---|---|---|
| DANIELLE GERRY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 4:18-CV-10-JHM |
| | ) | | |
| CHENG "BENNY" LIN, | ) | | |
| TAOQING "AMY" WANG, | ) | | **Jury Demanded** |
| YAMATO STEAKHOUSE OF | ) | | |
| JAPAN CORP, and YAMATO | ) | | |
| STEAK HOUSE INC, | ) | | |
| | ) | | |
| Defendants. | ) | | |
| | ) | | |

## COMPLAINT

Comes Plaintiff Danielle Gerry, by and through counsel, and for her complaint against Defendants Cheng "Benny" Lin, Taoqing "Amy" Wang, Yamato Steakhouse of Japan Corp and Yamato Steak House Inc., states as follows:

## TABLE OF CONTENTS

In order to aid in the ease of reference to this Complaint, captions are used throughout the Complaint to organize the allegations referenced in the caption. The following table contains the captions used in this Complaint and the page number of the Complaint where the caption can be found:

| | | | |
|---|---|---|---|
| I. | | Jurisdiction. | 3 |
| II. | | Parties. | 3 |
| III. | | Coverage. | 5 |
| | A. | Coverage as to Defendant Yamato Madisonville. | 5 |
| | B. | Coverage as to Defendant Yamato Vincennes. | 6 |
| | C. | Coverage as to Defendants Lin and Wang. | 6 |
| III. | | Facts of Defendants' Illegal Conduct. | 7 |
| | A. | Defendants Lin, Wang and Yamato Madisonville Illegally Fail to Pay Plaintiff Wages While Plaintiff is Employed as a "Waitress" From April, 2016 to October 30, 2017. | 7 |
| | B. | Defendants Lin, Wang and Yamato Madisonville Illegally Fail to Pay Plaintiff Wages While Plaintiff is Employed as "Manager" From October 31, 2017 to December 20, 2017. | 10 |
| | C. | Defendants Lin, Wang and Yamato Vincennes Illegally Fail to Pay Plaintiff Wages For Plaintiff's Work on Thanksgiving Day, 2017. | 15 |
| | D. | Defendants' Fraudulent Tax Reporting Regarding Plaintiff's Wages. | 16 |
| | E. | Plaintiff's Illegal Termination in Retaliation for Her Complaints Regarding Defendant's Illegal Nonpayment of Wages. | 17 |
| IV. | | Causes of Action. | 19 |
| | A. | Recovery of Minimum Wage Under the FLSA. | 19 |
| | B. | Recovery of Overtime Wage Under the FLSA. | 20 |
| | C. | Unjust Enrichment. | 20 |
| | D. | Conversion. | 20 |
| | E. | Breach of Contract. | 21 |
| | F. | Nonpayment of Wages Under K.R.S. 337.020. | 21 |
| | G. | Violations of the Internal Revenue Code. | 21 |

H.    Retaliatory Termination in Violation of FLSA.                    22

V.    Jury Demand.                                                      22

VI.   Prayer for Relief.                                               22

## I.    JURISDICTION

1.     Jurisdiction in this Court is proper under 28 U.S.C. § 1331 as this is an action arising, in part, pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. §201, *et seq.*, hereinafter called the "FLSA").

2.     The jurisdiction of the Court over this controversy is based upon 29 U.S.C. 216(b).

3.     This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

4.     Certain of Plaintiff's claims arise under state law but form part of the same Article III case or controversy as Plaintiff's claims under the FLSA.  Accordingly, this Court has supplemental jurisdiction over the state-law claims under 28 United States Code § 1367.

5.     Venue is proper in this Court because the Plaintiff resides within the District, was employed by Defendant in this District, and Defendant maintains business operations within the District.

6.     Venue is also proper in this Court because substantially all of the acts and/or omissions giving rise to Plaintiff's claim occurred within the Western District of Kentucky.

## II.    PARTIES

7.     At all times material hereto, Plaintiff Danielle Gerry was a resident of Hopkins County, Kentucky.

8.     Further, at all times material hereto, during the time Plaintiff was employed by Defendant Yamato Steak House of Japan Corp (hereafter, "Yamato Madisonville"), Plaintiff was

a non-exempt employee of Defendant Yamato Madisonville at Defendant Yamato Madisonville's restaurant in Madisonville, Kentucky.

9.      At all times material hereto, Defendant Yamato Madisonville, was, and continues to be a Kentucky for-profit corporation.  Defendant Yamato Madisonville may be served by service of process on its registered agent, Cheng Lin, at the registered office address provided by Defendant Yamato Madisonville to the Kentucky Secretary of State for said registered agent:  11 Park Ave., Madisonville, KY 42431.

10.      Plaintiff was employed to work on Thanksgiving Day, 2017 by Defendant Yamato Steak House, Inc. (hereafter, "Yamato Vincennes") as a non-exempt employee of Defendant Yamato Madisonville at Defendant Yamato Vincennes's restaurant in Vincennes, Indiana.

11.      At all times material hereto, Defendant Yamato Vincennes, was, and continues to be a Indiana for-profit corporation.  Defendant Yamato Vincennes may be served by service of process on its registered agent, Taoqing Wang, at the registered office address provided by Defendant Yamato Vincennes to the Indiana Secretary of State for said registered agent:  2423 N. 6th St., Vincennes, IN 47591.

12.      Defendant Cheng "Benny" Lin is an individual resident of both Madisonville, Kentucky and Vincennes, Indiana.  Defendant Lin is, together with Defendant Wang, the owner and managing agent of both Defendants Yamato Vincennes and Yamato Madisonville. Defendant Lin is the President of Yamato Madisonville.

13.      Defendant Taoqing "Amy" Wang is an individual resident of both Madisonville, Kentucky and Vincennes, Indiana.  Defendant Lin is, together with Defendant Lin, the owner

and managing agent of both Defendants Yamato Vincennes and Yamato Madisonville.

Defendant Wang is the President of Yamato Vincennes.

14.     At all times material hereto, Defendant Yamato Madisonville, was, and continues to be, engaged in business in the Commonwealth of Kentucky, with a principal place of business (a Japanese steakhouse-style restaurant) at 11 Park Ave., Madisonville, KY 42431.

## II.     COVERAGE

### A.     Coverage as to Defendant Yamato Madisonville.

15.     At all times material hereto other than Thanksgiving Day 2017, Plaintiff was Defendant Yamato Madisonville's "employee" within the meaning of the FLSA.

16.     At all times material hereto, Defendant Yamato Madisonville was the Plaintiff's "employer" within the meaning of the FLSA.

17.     Defendant Yamato Madisonville was, and continues to be, an "employer" within the meaning of the FLSA.

18.     At all times material hereto, Defendant Yamato Madisonville was, and continues to be, "an enterprise engaged in commerce" within the meaning of the FLSA.

19.     Specifically, at all material times hereto, upon information and belief, Defendant operated a Japanese steakhouse-style restaurant in Madisonville, Hopkins County, Kentucky.

20.     At all times material hereto, Defendant was, and continues to be, an enterprise engaged in the "production of goods for commerce" within the meaning of the FLSA.

21.     Upon information and belief, at all times material hereto, the annual gross revenue of Defendants was in excess of $500,000.00 per annum.

**B.**     **Coverage as to Defendant Yamato Vincennes.**

22.     On Thanksgiving Day 2017, Plaintiff was Defendant Yamato Vincennes's "employee" within the meaning of the FLSA.

23.     On Thanksgiving Day, 2017, Defendant Yamato Vincennes was the Plaintiff's "employer" within the meaning of the FLSA.

24.     Defendant Yamato Vincennes was, and continues to be, an "employer" within the meaning of the FLSA.

25.     At all times material hereto, Defendant Yamato Vincennes was, and continues to be, "an enterprise engaged in commerce" within the meaning of the FLSA.

26.     Specifically, at all material times hereto, upon information and belief, Defendant Yamato Vincennes operated a Japanese steakhouse-style restaurant in Vincennes, Knox County, Indiana.

27.     At all times material hereto, Defendant Yamato Vincennes was, and continues to be, an enterprise engaged in the "production of goods for commerce" within the meaning of the FLSA.

28.     Upon information and belief, at all times material hereto, the annual gross revenue of Defendant Yamato Vincennes was in excess of $500,000.00 per annum.

29.     At all times hereto, Plaintiff was "engaged in commerce" and subject to individual coverage of the FLSA.

30.     At all time hereto, Plaintiff was engaged in the "production of goods for commerce" and subject to the individual coverage of the FLSA.

**C.**     **Coverage as to Defendants Lin and Wang.**

31.     Defendants Lin and Wang are the owners of Yamato Madisonville.

32.     Defendants Lin and Wang are the owners of Yamato Vincennes.

33.     Defendants Lin and Wand did and do exert supervisory control over all employees (including Plaintiff) of both the Madisonville Restaurant and the Vincennes Restaurants, and were and are involved in the daily operations of the business as it pertains to the employment of all such employees.

34.     Defendant Lin and Wang are the individuals that established and implemented the wage policies of both Yamato Madisonville and the Vincennes Restaurants.

35.     Both Lin and Wang are each a covered employer under the FLSA, and are individually liable for the violations by Yamato Madisonville and Yamato Vincennes of the FLSA.

### III.     FACTS OF DEFENDANTS' ILLEGAL CONDUCT

**A.     Defendants Lin, Wang and Yamato Madisonville Illegally Fail to Pay Plaintiff Wages While Plaintiff is Employed as a "Waitress" From April, 2016 to October 30, 2017.**

36.     Plaintiff was employed from April 29, 2016 until December 20, 2017 by Defendant Yamato Madisonville as a non-exempt hourly-paid employee working at Defendant's restaurant located in Madisonville, Hopkins County, Kentucky.

37.     As an employee, Plaintiff was paid wages on hourly basis (for all hours Defendant credited Plaintiff with working, an issue about which Plaintiff complains in more detail below) in exchange for work she performed for Defendant.

38.     Plaintiff was initially hired to work in the position Yamato Madisonville refers to as "waitress" in Yamato Madisonville's restaurant.  Defendant Yamato Madisonville stated that she would be paid $2.50 per hour, plus tips received from customers.

39.     The Fair Labor Standards Act, at Section 3(m) and 29 C.F.R. § 531.59(b), requires that, in order to be entitled to apply customer's tips towards the employer's obligation to pay minimum wage, the employer must provide the following information to the employee:

1.     the amount of cash wage the employer is paying a tipped employee, which must be at least $2.13 per hour;

2.     the additional amount claimed by the employer as a tip credit, which cannot exceed $5.12 (the difference between the minimum required cash wage of $2.13 and the current minimum wage of $7.25);

3.     that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee;

4.     that all tips received by the tipped employee are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and

5.     that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions.

40.     Defendant Yamato Madisonville did not provide the information described in the preceding paragraph to Plaintiff in writing.

41.     Defendant Yamato Madisonville did not provide the information described in the preceding paragraph to Plaintiff in writing.

42.     Accordingly, Defendant Yamato Madisonville was not entitled to utilize the tip credit under FLSA Section 3(m) and underpaid Plaintiff for all non-overtime hours for which Defendant Yamato Madisonville paid Plaintiff $2.50 per hour by $4.75 per hour (the difference between the $7.25 minimum wage and the $2.50 paid).

43.     Upon information and belief, Defendant Yamato Madisonville's failure to provide information to its employees as required by Section 3(m) of the Fair Labor Standards Act was not an innocent oversight on Defendant Yamato Madisonville's part, as Defendant Yamato Madisonville intended to operate its restaurant and pay its employees in defiance of the Fair Labor Standards Act.

44.     For instance, in many pay periods, Plaintiff's tips, combined with the $2.50 per hour, totaled an average of less than $7.25.

45.     Defendant, however, in violation of 29 U.S.C. § 211(c) and 29 C.F.R. § 531.59(b), made no effort to determine whether or not Plaintiff's tips actually received totaled an average of $4.75 or more in each pay period so as to be able to demonstrate that Plaintiff received that amount in actual tips.

46.     Instead, Defendant fabricated an amount of "tips" which it reported to the government as having been received by Plaintiff designed to appear to result in the payment of minimum wage for the hours paid and, upon information and belief, in some periods higher than the amount actually received by Plaintiff.

47.     Further, although an employer may only take a "tip credit" for hours worked by the employee in an occupation in which the employee qualifies as a "tipped employee," see 29 C.F.R. § 531.51 and 531.59(b) and United States Department of Labor Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA), Yamato Madisonville paid Plaintiff as if it was entitled to a tip credit for all hours Plaintiffs worked despite the fact that the position of "waitress" at Yamato Madisonville's restaurant involved the "waitress" performing a substantial amount of time (in excess of 20 percent in the workweek) performing duties not by themselves directed toward producing tips.

48.     Therefore, Yamato Madisonville was not entitled to utilize the "tip credit" for time spent performing duties not directed toward producing tips, but nevertheless paid its employees less than minimum wage.

49.     Upon information and belief (including the information later learned that, for the period from November 1, 2017 to November 15, 2017, Yamato Madisonville paid Plaintiff for

63 hours worked, when Plaintiff in fact worked more than double that number of hours during this period), during the period Plaintiff was employed by Yamato Madisonville as a "waitress," Yamato Madisonville did not pay Plaintiff even $2.50 an hour for all hours worked, but instead falsely underreported her actual hours worked (as clocked in on Yamato Madisonville's time-keeping system) in making its paychecks, knowing that employees being paid only $2.50 per hour (less withholding) would be less likely to scrutinize the number of hours paid.

50.     During the period Plaintiff was employed by Yamato Madisonville as a "waitress," Plaintiff worked in excess of forty hours in certain workweeks, totaling, upon information and belief, more than one hundred hours of work in excess of forty hours per workweek.

51.     Plaintiff was not paid time-and-a-half pay for such hours, in violation of the FLSA.

52.     Indeed, Plaintiff was never paid any overtime pay during the entire period of time Plaintiff was employed by Defendant Yamato Madisonville, despite it being owed in numerous time periods during the period Plaintiff was employed by Yamato Madisonville as a "waitress."

> **B.     Defendants Lin, Wang and Yamato Madisonville Illegally Fail to Pay Plaintiff Wages While Plaintiff is Employed as "Manager" From October 31, 2017 to December 20, 2017.**

53.     In part based on the wages illegally withheld from Plaintiff, Defendants Lin and Wang created Defendant Yamato Vincennes, which owns and operates a Japanese steakhouse-style restaurant in Vincennes, Indiana.

54.     Lin and Wang, who had until that point been daily present in the Madisonville restaurant, therefore approached Plaintiff about serving as "Manager" of the Madisonville restaurant.

55.     Lin and Wang agreed on behalf of Defendant Yamato Madisonville to pay Plaintiff $80.00 per day of work, plus $8.00 per hour, for Plaintiff's work as "Manager" on days other than Saturday, and $100.00 per day for work on Saturday (but Plaintiff would not clock in and be paid $8.00 per hour on Saturday until 4:00 p.m., although she was required to report to work at 10:30 a.m.), and it was further expressly agreed and anticipated that Plaintiff would continue to work as a server and receives tips from customers, which would be retained by Plaintiff as her property.

56.     Plaintiff began her work as "Manager" under this arrangement on October 31, 2017.  Over the course of the next two months, Plaintiff worked so much for Yamato Madisonville that certain customers noticed that Plaintiff was always in the restaurant and jokingly asked Plaintiff "are you their slave?"

57.     Plaintiffs' work as "Manager" enabled Lin and Wang to focus their efforts on developing Yamato Vincennes.

58.     In contrast to Plaintiffs' dedication to her work, Lin, Wang and Yamato Vincennes did not meet their obligations either under the parties' agreement or the Fair Labor Standards Act.

59.     Specifically, Plaintiff was scheduled to work for Yamato Madisonville every day (although occasionally Plaintiff would work only part of the day, rather than the full shift listed in the following paragraph) from October 31, 2017 until December 20, 2017, except Thanksgiving Day, 2017, when Plaintiff worked for Yamato Vincennes.

60.     Plaintiff's regular shifts were Sunday, 11:30 a.m. to 9:00 p.m. (approximately nine and one-half hours), Monday through Thursday, from 10:30 a.m. until 9:30 p.m. (approximately eleven hours a day), and Friday and Saturday from 10:30 a.m. until 10:00 p.m.

(approximately eleven and a half hours per day) (Yamato Madisonville would require Plaintiff to arrive at 10:30 a.m. and begin working but would not allow Plaintiff to clock in until 4:00 p.m. on Saturdays).

61.    Accordingly, Plaintiff worked in excess of forty hours per workweek every workweek after she began working as "Manager" of the Madisonville Restaurant on October 31, 2017.

62.    No exemption applied during the period from October 31, 2017 until Plaintiff's termination that would permit Yamato Madisonville from paying Plaintiff overtime pay for work in excess of forty hours per workweek.

63.    However, Plaintiff was never paid overtime (time and a half) pay during any workweek.

64.    Plaintiff's duties as "Manager" of the Madisonville Restaurant was primarily to interact with customers in English, something that the actual manager installed in the Madisonville Restaurant by Defendants, Defendant Cheng's brother "Gene," could not do.

65.    Contrary to the title of her position, although Plaintiff did engage in some managerial duties,[1] these were not Plaintiff's primary duties based on all the facts of Plaintiff's work, with the major emphasis on the character of the employee's job as a whole.

66.    Plaintiff's primary duty as "Manager" was not managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise.  For instance,

---

[1] As used in the text, "managerial duties" means duties in the nature of interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

although the enterprise was a restaurant, Plaintiff had no role in supervise the kitchen staff, or the ordering or preparation of food.

67.     Further, Plaintiff did not customarily and regularly direct the work of at least two or more other full-time employees or their equivalent.  Instead, Lin and Wang directed the work of the other employees by installing Defendant Cheng's brother, who also had the surname Lin and went by the name "Gene" (although this is believed to not be his actual name) in the Madisonville restaurant.

68.     Lin and Wang had installed an Internet based camera system in the Madisonville restaurant that allowed Lin and/or Wang to view what was occurring in the Madisonville restaurant from a computer or cell phone in the Vincennes restaurant.  The system allowed Lin and Wang (while they were in the Vincennes restaurant or another remote location) to rotate the angle of the cameras to view different angles within the Madisonville restaurant.

69.     In addition to containing a video component, the camera system installed in the Madisonville restaurant also enabled Lin and Wang to hear what was occurring in the Madisonville restaurant, as well as speak into a computer or cell phone microphone remotely and have their voice transmitted in the Madisonville restaurant.

70.     Lin and Wang would regularly monitor what was occurring in the Madisonville restaurant using this system.  For instance, on one occasion, on December 7, 2017, Wang reported to Plaintiff that Wang had she believed she had seen over this system another server take Plaintiff's tip money from a jar while Plaintiff was gone from the Madisonville Restaurant getting a haircut.

71.     In addition to viewing what was occurring over the Internet-based camera system, Lin and Wang would have "Gene" follow Plaintiff and other employees around the restaurant

using a videoconferencing application through cell phones; Lin or Wang would be in Vincennes, but would be able to see what was depicted through the cell phone camera of "Gene"'s cell phone, and hear what was being said.

72.     Accordingly, Plaintiff and the other employees were supervised by "Gene" and/or Lina and Wang, and Plaintiff was not the supervisor of the other employees.

73.     In addition to not being an actual managerial employee, Plaintiff's salary of $80.00 per day (plus $20.00 additional for Saturday), even if it were payable every day of the year, would amount to an annual salary of $30,240.00 and, accordingly, Plaintiff did not meet the salary threshold of $47,476, and therefore could not qualify as an exempt salaried employee under Section 13(a)(1) of the FLSA.

74.     Further, Plaintiff's arrangement with Yamato Madisonville was that they were to pay her a daily pay of $80.00 per day worked, rather than a salary payable weekly or less frequently.  Accordingly, Plaintiff was not a "salary basis" or "bona fide executive" employee under Section 13(a)(1) of the FLSA.  See Fact Sheet #17G: Salary Basis Requirement and the Part 541 Exemptions Under the Fair Labor Standards Act (FLSA)

75.     Plaintiff was not in fact paid the promised $80.00 per day.  Instead, after Plaintiff began work, Defendant Wang and Yamato made ever-changing explanations of when these amounts would be paid, first saying that they would be included in a payment at Christmas, and then saying that they would be paid bi-annually in January and July.

76.     Therefore, even if Plaintiff was otherwise a "salary basis" employee, Plaintiff was not a "salary basis" employee under Section 13(a)(1) of the FLSA because of the non-payment of the amount Plaintiff was promised.  See Fact Sheet #17G: Salary Basis Requirement and the Part 541 Exemptions Under the Fair Labor Standards Act (FLSA)

77.     Plaintiff's regular pay for forty hours a week amounted to $900.00, which is the sum of her $320.00 hourly pay ($8.00 an hour times 40 hours) plus $580.00 (the agreed upon additional compensation of $80 per day for the six days other than Saturday and $100 per day for Saturday).  Accordingly, Plaintiff's regular pay rate (for purposes of calculating overtime pay) was $22.50 per hour ($900.00 per week divided by 40 hours).  Accordingly, Plaintiff should have been paid $33.75 (one-and-a-half times regular pay) for hours worked in excess of forty hours per workweek.

78.     Because Plaintiff had the temerity to assert her rights under the FLSA and point out that Defendant's practices were illegal, Defendant, in retaliation, terminated Plaintiff.

**C.     Defendants Lin, Wang and Yamato Vincennes Illegally Fail to Pay Plaintiff Wages For Plaintiff's Work on Thanksgiving Day, 2017.**

79.     On Thanksgiving Day, the Madisonville Restaurant was scheduled to be closed, but the Vincennes Restaurant was going to be opened.

80.     Defendants asked Plaintiff if she wanted to work Thanksgiving at the Vincennes Restaurant.

81.     Although Defendants did not describe how Plaintiff would be paid, Plaintiff agreed to work Thanksgiving at the Vincennes restaurant.

82.     Defendant picked Plaintiff up at their home, drove Plaintiff to Vincennes, and had Plaintiff work as a server at the Vincennes Restaurant for Defendant Yamato Vincennes on Thanksgiving Day.

83.     Thereafter, Defendants returned Plaintiff to her home in Madisonville, but not before stopping to run errands of their own along the way; Plaintiff had no choice but to wait while Defendants ran these errands.

84.     Defendants did not have Plaintiff complete a Form W-4 or I-9 for her work for Yamato Vincennes.

85.     Defendants did not pay Plaintiff any wages for her work for Yamato Vincennes, saying instead that she could keep her tips from customers.

86.     As with Plaintiff's employment at Yamato Madisonville, Defendants did not provide the information required to be given by employers in order to take the tip credit (see Paragraphs 39-41 above).

87.     Defendants did not have any good faith belief that they had any exemption or basis under the FLSA to pay Plaintiff no wages for her work at Yamato Vincennes on Thanksgiving Day.

88.     Defendant Yamato Madisonville also did not pay Plaintiff any amount for her work for Yamato Vincennes.

**D.     Defendants' Fraudulent Tax Reporting Regarding Plaintiff's Wages.**

89.     Section 7434 of the Internal Revenue Code provides that "[i]f any person willfully files a fraudulent return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."  26 U.S.C. § 7434(a).

90.     An IRS Form W-2 is an information return pursuant to the IRC.  Amount allocated as tips to employees, as reported to the IRS by food service employees such as Defendants, are also contained on an information return.

91.     Defendants willfully filed fraudulent information returns with respect to payments purportedly made to Plaintiff when it reported that her earned tip income, when combined with

the hourly rate of $2.50 per hour, met or exceeded $7.25 despite this being false (and despite

Defendants not maintaining accurate records of the amount earned by Plaintiff in tips).

92.     Defendants had substantial economic motive to incorrectly report tip income to

the IRS.  Defendants' reporting practices allowed the Defendants to avoid making up any

deficiency (between Plaintiff's actual earnings and minimum wage).

> **E.     Plaintiff's Illegal Termination in Retaliation for Her Complaints
> Regarding Defendant's Illegal Nonpayment of Wages.**

93.     Plaintiff complained to Defendants Lin, Wang and Yamato about not being paid

for her hours worked, including overtime hours, and was terminated in retaliation for her

assertion of her rights under the FLSA.

94.     Specifically, Defendant Wang prepared payroll for the period from December 1,

2017 to December 15, 2017 by accessing Yamato Madisonville's computerized timekeeping

system for employees to determine each employee's hours spent.

95.     Although Yamato Madisonville's computerized timekeeping system showed that

Plaintiff had worked 148.2 hours from December 1, 2017 to December 15, 2017 (not including

time Plaintiff was required to work on Saturdays without clocking in), Wang caused Plaintiff to

be paid for 63 hours for this time period.

96.     Plaintiff complained to Wang on Monday, December 18, 2017 that she was paid

for 63 hours worked for the period from December 1, 2017 to December 15, 2017, when Plaintiff

in fact worked more than double that number of hours during this period (Plaintiff stated that she

actually worked 134.2 hours during this period, not including time Plaintiff was required to work

on Saturdays without clocking in).

97.     Wang told Plaintiff to discuss this matter with Cheng.  Wang claimed that she did

not know why Plaintiff's hours were cut, which was untrue.

98.     When Plaintiff raised this issue with Cheng, he simply turned and walked away.

99.     The next day, Plaintiff arrived at work to find that a new schedule had been prepared which substantially reduced her hours and had her working as a server and a delivery driver (a position Plaintiff had repeatedly told Defendants she could not perform as Plaintiff did not have a valid driver's license).

100.    In addition, Plaintiff was told by another employee that Defendant had asked that other employee whether they would be willing to take Plaintiff's position.

101.    On the next day, December 20, 2017, "Gene" told Plaintiff to give tips she had received from customers to the delivery driver.

102.    When Plaintiff refused, "Gene" began yelling and screaming in Chinese, and threw cups.

103.    Defendants Wang, Lin and "Gene" speak Chinese, although they hold themselves out to customers, and held themselves out to Plaintiff for some period of time, as Japanese to further the purported "genuine" nature of their Japanese steakhouse-style restaurant.

104.    "Gene" called and spoke on the telephone in Chinese.

105.    Upon information and belief, "Gene" was calling Defendants Wang and Lin, who were at the time at the Vincennes restaurant.

106.    After this call, "Gene" told Plaintiff to leave the Madisonville Restaurant.

107.    Plaintiff told Wang that "Gene" had told her to leave, and that Lin had cut her hours and demoted her to cashier after Plaintiff had complained to Lin about Plaintiff's hours being cut, and Wang stated only that "I paid everything you work for me" and that:

> It's ok if you all don't want work there.i just want to say you are good worker never late.always come to work when I need you.  I can't fired you.  But if you quit that's fine.

108.    When Plaintiff pointed out that "Gene" had already fired her, Wang responded "Ok.  Just told everyone come back and get check the 1th," which was meant as an indication of when Plaintiff (and the employees who quit in response to Plaintiff's termination) could pick up their final paycheck.

## IV.    CAUSES OF ACTION

### A.    Count I -- Recovery of Minimum Wage Under the FLSA.

109.    The paragraphs above are incorporated herein.

110.    At all times relevant, Defendants did not have a good faith basis for their failure to pay the federal applicable overtime compensation to Plaintiff for all hours worked in excess of forty (40) hours per week

111.    As a result of Defendants' willful failure to pay Plaintiff the applicable federal applicable overtime compensation for all hours worked over forty (40) per week during the relevant statutory limitations' period and minimum wage, Defendants have violated the FLSA, 29 U.S.C. §§ 201, *et seq.*

112.    Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

113.    Defendants have had a uniform plan, policy and practice of willfully refusing to pay the federal applicable overtime compensation to Plaintiff for all hours worked in excess of forty (40) hours per week, and of refusing to pay minimum wage.

114.    At all times relevant, Defendants have had actual and/or constructive knowledge of willfully refusing to pay the federal applicable overtime compensation and minimum wage to Plaintiff.

115.    All Defendants failed to pay Plaintiff minimum wage, in violation of the FLSA.

116.    Due to Defendants' violation of the FLSA, Plaintiff is (i) entitled to unpaid minimum wages, (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 et seq., (iii) entitled to declaratory relief pursuant to 28 U.S.C. §2201; and (iv) entitled to an award of reasonable attorney's fees and costs, pursuant to 29 U.S.C. § 216(b).

**B.    Count II -- Recovery of Overtime Wage Under the FLSA.**

117.    The paragraphs above are incorporated herein.

118.    Defendants Yamato Madisonville, Lin and Wang failed to pay Plaintiff overtime pay, in violation of the FLSA.

119.    Due to Defendants' violation of the FLSA, Plaintiff is (i) entitled to unpaid minimum wages, (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 et seq., (iii) entitled to declaratory relief pursuant to 28 U.S.C. §2201; and (iv) entitled to an award of reasonable attorney's fees and costs, pursuant to 29 U.S.C. § 216(b).

**C.    Count III -- Unjust Enrichment.**

120.    The paragraphs above are incorporated herein.

121.    Defendants failed to pay Plaintiff her wages, and were unjustly enriched thereby, and it would be unjust to allow Defendants to retain Plaintiff's wages.

122.    Further, Defendants, by not paying Plaintiff her wages, also failed to pay employment taxes to governmental authorities, which amounts constitute an unjust enrichment of Defendants, and it would be unjust to allow Defendants to retain amounts that they should have paid, but did not pay, to governmental authorities on account of Plaintiff's employment.

**D.    Count IV -- Conversion.**

123.    The paragraphs above are incorporated herein.

124.    Defendants' intentional acts of cutting Plaintiff's hours constitute conversion of Plaintiff's lawfully earned wages.

### E.    Count V -- Breach of Contract.

125.    The paragraphs above are incorporated herein.

126.    Defendant Yamato Madisonville contracted to pay Plaintiff for her work from October 31, 2017 to December 20, 2017, in addition to her hourly wage, $80.00 per day worked by Plaintiff other than Saturday, and $100.00 per Saturday worked by Plaintiff.

127.    Defendants breached their contractual obligations by not making the promised payments to Plaintiff, although Plaintiff performed her work as required of her under the contract.

### F.    Count VI -- Nonpayment of Wages Under K.R.S. 337.020.

128.    The paragraphs above are incorporated herein.

129.    Defendant Yamato Madisonville failed to pay Plaintiff her wages for her hours worked.

130.    Plaintiff is entitled under K.R.S. 337.020 to payment of her wages for her hours worked.

### G.    Count VII -- Violations of the Internal Revenue Code.

131.    The paragraphs above are incorporated herein.

132.    Defendant made willful, fraudulent and false information returns relating to Plaintiffs' employment.

133.    Based on Defendant's willful and fraudulent filings, Defendant is liable to Plaintiff in an amount equal to the greater of $5,000 or the sum of any actual damages sustained

by Plaintiff as a result of such filing, the costs of this action, and attorney's fees pursuant to 26 U.S.C. § 7434(b).

**H.      Count VIII -- Retaliatory Termination in Violation of FLSA.**

134.     The paragraphs above are incorporated herein.

135.     Defendants Yamato Madisonville, Lin and Wang terminated Plaintiffs' employment with Yamato Madisonville in retaliation for Plaintiff's lawful assertion of her rights under the FLSA, which retaliatory discharge was itself in violation of the FLSA.

136.     Plaintiff suffered damages as a result of her illegal termination, including but not limited to lost wages and emotional distress.

## V.      JURY TRIAL DEMAND

137.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

## VI.      PRAYER FOR RELIEF

Wherefore, Plaintiff prays that the Court grant Plaintiff:

A.      An award of compensation for unpaid overtime and minimum wages under the FLSA;

B.      An award of liquidated damages under the FLSA;

C.      Compensatory damages for Plaintiff's losses and damages not covered under the FLSA;

D.      Punitive damages in an amount sufficient to deter Defendant and other employers similarly situated from engaging in the acts complained of herein in the future;

E.      An award of prejudgment and post-judgment interest at the applicable legal rate;

F.      An award of Plaintiff's costs, expenses, and disbursements relating to this action together with reasonable attorneys' fees and expert fees;

G.      Such other general, further and specific relief to which she may be entitled, or which this Court otherwise deems just and proper.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster, BPR #023626
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
*Counsel for Plaintiff*

23